UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NATHAN OKPOTI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*,<br><br>　　　　Defendants. | Case No. 2:15-cv-00110-APG-CWH<br><br>**ORDER GRANTING DEFENDANTS' SUMMARY JUDGMENT MOTIONS**<br><br>(ECF Nos. 80, 81, 82) |

　　　　Plaintiff Nathan Okpoti filed this lawsuit against defendants Las Vegas Metropolitan Police Department ("LVMPD"), Officer John Brandon, and the City of Las Vegas ("City"). Okpoti alleges that he suffered a stroke while driving and that Officer Brandon pulled him over and then arrested him on suspicion of driving under the influence when instead Brandon should have provided him medical assistance. He further alleges Officer Brandon took him to the Las Vegas Detention Center ("LVDC"), where he remained in custody for several days and did not receive medical attention.

　　　　I grant the defendants' motions for summary judgment. Okpoti's false arrest claims fail because Brandon had probable cause to arrest him for driving under the influence. Moreover, Okpoti's Fourteenth Amendment claims fail because Okpoti has not shown that Brandon or a City employee were deliberately indifferent to his serious medical needs or that additional training would have resulted in Okpoti being referred for medical care.

**I. BACKGROUND**

　　　　On January 24, 2013, Officer Brandon stopped Okpoti for suspicion of driving under the influence after Okpoti was seen swerving and hitting the curb. ECF No. 81-1 at 2, 57-58. When Brandon asked Okpoti to get out of the car, Okpoti had trouble opening the door. *Id.* at 59, 93. Okpoti's eyes were watery and glassy; his speech was confused and incoherent; he was wobbling, falling, and swaying; and his clothing was unkempt. *Id.* at 93. Okpoti incorrectly identified the

street he was on and did not know the date. *Id.* Okpoti denied he was under a doctor's care or that he had any physical or mental handicaps. *Id.* Okpoti also denied having consumed any alcoholic beverages. *Id.* Okpoti told Brandon that he had a headache and had taken over-the-counter pain medicine. ECF Nos. 80-3 at 21; 81-2 at 6.

Brandon could not smell alcohol on Okpoti but Okpoti failed three field sobriety tests. ECF No. 81-1 at 59-60, 94-96. Brandon concluded Okpoti was under the influence of some substance but Brandon did not know what it was. *Id.* at 60. Brandon called to the scene Officer Michael Laythorpe, a drug recognition evaluator, for a second opinion. *Id.* at 60, 65; ECF No. 81-2 at 40.

Laythorpe also did not smell alcohol and he did not observe Okpoti acting in a bizarre or agitated fashion, although Okpoti's speech was slurred. ECF No. 81-2 at 49. Okpoti's eyes were red and watery but Laythorpe saw no abnormality between the pupils. *Id.* Laythorpe conducted a field sobriety test and then told Brandon that he believed Okpoti was under the influence of either cannabis or spice. *Id.* at 49, 55. Neither Brandon nor Laythorpe thought Okpoti was experiencing a medical episode. *Id.* at 51; ECF No. 81-1 at 63. Laythorpe did not see any droopiness in Okpoti's face, eyelids, or lips. ECF No. 81-2 at 51-52. Brandon arrested Okpoti for driving under the influence of a controlled substance and transported him to LVDC. ECF Nos. 81-1 at 67-68; 80-1 at 40; 81-2 at 62.

During the intake process at LVDC, a registered nurse conducts a "receiving screen," which involves obtaining a medical history, taking vital signs, and conducting a mental health evaluation. ECF No. 80-2 at 3. According to the information recorded during that process, Okpoti complained of a migraine and stated he took Tylenol the day before. ECF No. 80-2 at 6. Okpoti denied using drugs or alcohol. *Id.* The registered nurse who conducted the receiving screen noted nothing abnormal about Okpoti's appearance, behavior, state of consciousness, or movement. *Id.* According to the intake mental health assessment, Okpoti was oriented and did not display inappropriate affect, mood, speech, or behavior. *Id.* at 11. Okpoti was placed in the general population and not referred for medical treatment or further evaluation. *Id.* at 8.

1   Although Okpoti signed the receiving screen record, Okpoti denies he said he had a
2   migraine or that he took Tylenol. ECF Nos. 81-2 at 29; 80-2 at 9.  Okpoti states he told jail staff
3   he had a headache and that he thought "something was wrong" but he "could not articulate the
4   details of [his] condition." ECF No. 80-3 at 12.

5   Okpoti appeared before a judge on January 25, 2013 and the judge found probable cause
6   for the charge. ECF No. 80-4 at 2.  Okpoti was released from LVDC on January 28, 2013 after no
7   complaint was filed in the criminal case. ECF Nos. 80-1 at 111-13; 80-4 at 2; 81-2 at 77.

8   Okpoti did not seek or receive medical treatment following his release from custody until
9   his mother took him to a hospital on February 28, 2013. ECF No.80-3 at 25-26.  As it turns out,
10  Okpoti was not under the influence of a controlled substance.  Rather, he was experiencing a
11  medical episode caused by his previously undiagnosed condition of cavernous angiomas, which
12  involves abnormal bleeding of vessels in the brain. ECF Nos. 81-1 at 77, 84.

13  **II. ANALYSIS**

14  Summary judgment is appropriate if the pleadings, discovery responses, and affidavits
15  demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to
16  judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is material if it "might affect the
17  outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
18  (1986).  An issue is genuine if "the evidence is such that a reasonable jury could return a verdict
19  for the nonmoving party." *Id.*

20  The party seeking summary judgment bears the initial burden of informing the court of the
21  basis for its motion and identifying those portions of the record that demonstrate the absence of a
22  genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden
23  then shifts to the nonmoving party to set forth specific facts demonstrating there is a genuine
24  issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.
25  2000).  I view the evidence and make reasonable inferences in the light most favorable to the
26  nonmoving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

To establish a claim under § 1983, a plaintiff must show "the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The parties do not dispute that each defendant acted under color of state law.

**A. False Arrest**

Okpoti's federal and state law false arrest claims against Brandon and LVMPD fail because Brandon had probable cause to arrest Okpoti for driving under the influence. *See Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964-65 (9th Cir. 2001) (stating a "claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification"); *Grover v. Clark Cnty.*, 625 P.2d 85, 86 (Nev. 1981) (affirming a grant of summary judgment on a state law false arrest claim because "there was no material question of fact presented as to the existence of probable cause to arrest"). "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007) (quotation omitted). "[P]robable cause means 'fair probability,' not certainty or even a preponderance of the evidence." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc) (quotations omitted). The inquiry is based on the "facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). This may include objectively reasonable information provided by other law enforcement personnel. *Green v. City & Cnty. of S.F.*, 751 F.3d 1039, 1045 (9th Cir. 2014).

Prior to the traffic stop, Brandon received reports that Okpoti had been swerving and hitting the curb and Brandon observed Okpoti failing to maintain his travel lane. Okpoti's appearance and behavior were consistent with someone under the influence of a controlled substance. Okpoti failed three different field sobriety tests. Brandon nevertheless called for a second opinion. Laythorpe conducted a fourth field sobriety test, after which Laythorpe told Brandon that he believed Okpoti was impaired. Brandon thus had probable cause to arrest

Okpoti.[1]  Because Brandon did not falsely arrest Okpoti, LVMPD cannot be liable under a respondeat superior theory on the state law false arrest claim.  I therefore grant summary judgment in favor of Brandon and LVMPD on Okpoti's false arrest claims.

**B.  Deliberate Indifference to Medical Needs**

*1. Brandon and LVMPD*

Because Okpoti was a pretrial detainee, his claims that the defendants were deliberately indifferent to his medical needs are governed by the Fourteenth Amendment rather than the Eighth Amendment. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070-71 (9th Cir. 2016) (en banc), *cert. denied sub nom. Los Angeles Cnty., Cal. v. Castro*, No. 16-655, 2017 WL 276190 (Jan. 23, 2017).  As a result, the usual deliberate indifference standard under Eighth Amendment jurisprudence does not control. *Id.*  Instead, I apply an objective standard. *Id.*  Consequently, to show Brandon violated his Fourteenth Amendment right to adequate medical care while in custody, Okpoti must show: (1) Brandon "made an intentional decision with respect to the conditions under which [Okpoti] was confined;" (2) "[t]hose conditions put [Okpoti] at substantial risk of suffering serious harm;" (3) Brandon "did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of [Brandon's] conduct obvious;" and (4) "[b]y not taking such measures, [Brandon] caused [Okpoti's] injuries." *Id.* at 1071.

Okpoti's claim fails on the third element.  Both Brandon and Laythorpe denied that they believed Okpoti was experiencing a medical problem.  Okpoti's behavior and appearance were consistent with someone under the influence of a controlled substance and would not necessarily have indicated a serious medical episode.  Okpoti relies primarily on a booking photo, which he contends shows the left side of his face drooping.  However, no reasonable jury viewing that photo could conclude that it shows such marked drooping of the left side of his face that a

---

[1] Brandon also is entitled to qualified immunity on the § 1983 claim because any mistake about whether he had probable cause would have been reasonable. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

reasonable officer would have been aware that Okpoti was suffering from a neurological episode. *See* ECF No. 96 at 7.  Okpoti presents no evidence beyond the photo itself to support his argument that a reasonable officer would know just by looking at him that he was suffering from a neurological episode.  In contrast, Laythorpe testified that although he had training on how to recognize seizure- and stroke-like symptoms, he did not believe Okpoti was suffering from a medical episode. ECF No. 81-2 at 45, 51-53.

Okpoti also relies on the medical records from his hospital visit post-release, which document drooping on the left side of his face. ECF No. 81-2 at 88.  But Okpoti's condition a month later, following a period in which he received no medical treatment, does not establish what symptoms or appearance he presented when Brandon arrested him.  The medical records thus do not raise an issue of fact about what a reasonable officer would have known about the risk to Okpoti's health on the night of his arrest.

In sum, Okpoti has not presented evidence raising a genuine dispute that a reasonable officer under the circumstances would have appreciated the high degree of risk involved, thus making obvious the consequences of Brandon's failure to seek medical attention for Okpoti. Consequently, Brandon was not deliberately indifferent to Okpoti's serious medical needs and he therefore did not violate Okpoti's Fourteenth Amendment rights.  Because Okpoti was not deprived of a constitutional right, LVMPD also cannot be liable on Okpoti's deliberate indifference claim. *See Castro*, 833 F.3d at 1075.

2. *City of Las Vegas*

Okpoti did not assert a claim against any City employees in their individual capacities. Instead, he brings a claim against the City for failure to train and supervise its employees at LVDC.  Okpoti does not take issue with the City's formal policies, which include a booking procedure with multiple opportunities for medical screening when a pretrial detainee is admitted into the LVDC. *See* ECF No. 80-1 at 3-5, 15, 18, 22, 30-32, 42-44, 96-97; 80-2 at 2 (booking process includes multiple individuals who look for observable medical or mental health issues and who ask both the detainee and the transporting officer about medical complaints or issues,

including a pre-booking officer, a registered nurse, a corrections booking officer, and a classification officer). Instead, he claims the City is liable because it: (1) failed to train its employees on how to recognize when a detainee is experiencing a neurological episode; (2) lacks a policy of reviewing the intake forms for accuracy; and (3) has no mechanism for reviewing detainees' health following intake and instead relies on the detainees to self-report if they need medical care.

Each of these theories fails because, as with Brandon and LVMPD, Okpoti has not presented evidence that a reasonable LVDC employee in these circumstances would have appreciated the high degree of risk involved. Moreover, Okpoti has not presented evidence showing "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016). In other words, even if a particular City employee was deliberately indifferent to Okpoti's medical needs, he has not presented evidence raising a genuine dispute that the City's alleged failures were the moving force behind that violation.

Okpoti has not presented evidence that further training on how to recognize a neurological episode would have resulted in him receiving medical care. By Okpoti's own testimony, when he saw the nurse at LVDC, his headache was gone and his difficulty speaking had resolved. ECF No. 80-1 at 5-7. Okpoti was still experiencing difficulty walking but he had no other symptoms. *Id.* The City has presented expert opinions that given the symptoms Okpoti presented—which were consistent with being under the influence of a controlled substance—there was no basis to further investigate for a neurological condition. *See* ECF Nos. 80-8 at 5; 80-9. Okpoti has not presented any contrary evidence that someone with additional training would have recognized that Okpoti was having a neurological episode.

Okpoti again relies principally on his booking photo. However, as discussed above, the photo does not show obvious drooping on the left side of Okpoti's face. *See* ECF No. 96 at 7; *see also* ECF No. 80-1 at 48, 113. Okpoti apparently is suggesting that anyone who was properly trained would conclude that he was suffering from a neurological episode if they saw him as he

appears in that photo. The photo is simply not that obvious, and he presents no evidence to support that conclusion. Okpoti also relies on his medical records from his hospital visit post-release, but these records do not raise a genuine dispute as to his appearance and condition while at LVDC a month earlier.

Likewise, Okpoti does not explain how reviewing the intake forms for accuracy would have resulted in him receiving medical attention. Okpoti admits that by the time he was examined at LVDC, several of his symptoms had abated. And he presents no evidence that even if the receiving screen form had reflected more of the behaviors Brandon observed at the scene of the traffic stop, it would have resulted in the nurse or other City employees referring Okpoti for medical evaluation.

Finally, Okpoti presents no evidence that if the City had a policy for reviewing detainees' health following intake other than self-reporting, he would have been referred for medical care. Okpoti notes two incidents that he contends show he was still suffering from his condition while in detention. First, he wore his jail uniform backwards and his cellmates teased him about it until he changed. ECF No. 81-2 at 24. Second, after Okpoti walked into the wrong cell, his cellmates wrapped a towel on the door handle so he would know which one was his. *Id.* at 25. There is no evidence LVDC personnel saw that Okpoti put his uniform on incorrectly or that they knew he went to the wrong cell and needed a marker to find his cell. Nor does Okpoti present evidence that even if these incidents had been observed, it would indicate that Okpoti needed medical attention. Okpoti presents no other evidence that if the City had implemented a post-intake policy for screening inmates' health beyond self-reporting, LVDC employees would have determined that Okpoti needed medical attention.

Okpoti has not presented evidence that any City employee was deliberately indifferent to his medical needs, nor has he shown that the City's failure to train or supervise its employees was the moving force behind any denial of medical care while he was a pretrial detainee. I therefore grant the City's motion for summary judgment.

/ / / /

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendant City of Las Vegas's motion for summary judgment **(ECF No. 80) is GRANTED**.

IT IS FURTHER ORDERED that defendant John D. Brandon's motion for summary judgment **(ECF No. 81) is GRANTED**.

IT IS FURTHER ORDERED that defendant Las Vegas Metropolitan Police Department's motion for summary judgment **(ECF No. 82) is GRANTED**.

The clerk of the court is directed to enter judgment in favor of the defendants on all of Okpoti's claims.

DATED this 27th day of February, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE